UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 0:26-cr-00007-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JEREMY T. BRYSON, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

At the close of the government's proof, Defendant Jeremy Bryson moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). [R. 89.] The Court deferred ruling on the motion and the defense proceeded with its case. *Id.* Ultimately, the jury found Defendant Jeremy Bryson guilty of all charges in the Superseding Indictment. [R. 94.] The Court ordered briefing on the Rule 29 Motion, and the Motion is now ripe for review. [R. 89.] For the reasons that follow, Defendant's Motion for Judgment of Acquittal is **DENIED**.

**I**

Defendant Jeremy Bryson was indicted on March 6, 2025 on one count of conspiracy to distribute and dispense Schedule II and Schedule IV controlled substances in violation of federal law, one count of conspiracy to unlawfully use the Drug Enforcement Agency registration number of another, and one count of engaging in a monetary transaction in criminally derived property of a value greater than $10,000. [R. 1.] On November 6, 2025, a federal grand jury returned a superseding indictment, charging Bryson with the same counts as the previous indictment, and additionally with six counts of distributing and dispensing Schedule II controlled

substances in violation of federal law.  [R. 57.]  All of these charges arose out of Bryson's involvement as the owner of a medical practice, Appalachian Family Medicine (AFM), in Paintsville, Kentucky.  *Id.*

The case proceeded to trial on February 23, 2026.  [R. 83.]  Over the course of eight days, during the United States' case-in-chief, the jury heard from twenty-one government witnesses. The United States called former AFM patients, employees, and providers to testify, as well as Special Agent Jared Sullivan, who investigated this case, and Dr. Michael Harned, who was retained by the United States to offer opinion testimony regarding the prescribing practices at AFM.  [R. 91.]  The United States also called Don Bryson, the Defendant's father, who was employed as a medical consultant at AFM.  *Id.*  The United States introduced hundreds of exhibits into evidence, including patient files, text messages, prescription records, photos and evidence obtained from the execution of a search warrant at AFM, and a recording of a phone call between Defendant Jeremy Bryson and Special Agent Jared Sullivan.  *Id.*

At the close of the United States' case-in-chief, Bryson orally moved for acquittal pursuant to Federal Rule of Criminal Procedure 29(a).  [R. 89.]  The Court deferred ruling on the motion and requested briefing on the motion, pending the jury's verdict.  *Id.*  On March 4, 2026, the case was submitted to the jury, and the jury returned a verdict of guilty on all nine counts of the Superseding Indictment.  [R. 90.]  Subsequently, Bryson submitted a memorandum in support of his Rule 29 motion for acquittal, and the United States filed its Response.  [R. 96; R. 100.]  Bryson did not file a reply, and time to do so has now passed.  [*See* R. 98.]  Thus, the motion is now ripe for review.

2

**II**

Rule 29 requires this Court to enter a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court views the evidence in the light most favorable to the government, and then it considers whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003). Under this standard, "[t]he government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (quoting *United States v. Head*, 927 F.2d 1361, 1365 (6th Cir. 1991)).

"In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)). Finally, the Court must decide the motion on the basis of the evidence at the time the ruling was reserved. Fed. R. Crim. Pro. 29(b). The Court, therefore, only considers the evidence presented during the government's case-in-chief.

As the United States notes, both Bryson's oral Rule 29 motion and memorandum in support can only reasonably be interpreted as attacking the conviction on Count 1 of the Superseding Indictment. Bryson does not challenge the sufficiency of the evidence as it relates to the use of the DEA registration of another (Counts 2-8), nor does he challenge the sufficiency of the evidence as it relates to engaging in a monetary transaction in criminal derived property (Count 9). [*See* R. 96.] As to Count 1 of the Superseding Indictment, Bryson essentially brings three challenges: (1) a challenge to the sufficiency of the evidence generally, (2) a legal challenge that Bryson cannot be convicted on a conspiracy charge because the conspiracy did not

3

include anyone with the ability to issue prescriptions, and (3) a challenge to the use of the conjunctive "and" in the Superseding Indictment, with respect to distributing "and" dispensing. [R. 96.]  The Court will address these challenges in turn.

A

Bryson first challenges the sufficiency of the evidence as to Count 1, stating that the evidence does not show that he did any of the following: (1) directed an illegal prescribing scheme, (2) "conspired with prescribers or a pharmacy to distribute drugs illegally," (3) "knowingly participated in unlawful distribution," (4) told any prescriber what controlled substances to prescribe or how to prescribe them, (5) established a quota, prescription incentive, or kickback with a pharmacy, or (6) that the "regulatory and compliance issues" at AFM rose "to the level of criminal intent."  [R. 96 at 1-2.]  The United States argues in Response that many—if not all—of these facts were not necessary to sustain a conviction on Count 1, and otherwise contrary to the proof offered at trial.  [R. 100 at 16.]

As noted above, Count 1 of the Superseding Indictment charged Bryson with knowingly conspiring to distribute and dispense Schedule II and Schedule IV controlled substances in an unauthorized manner, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. [R. 57 at 3.]  To prove this Count, the government was required to prove that "two or more people agreed to violate federal drug laws and that [Jeremy Bryson] knowingly and voluntarily participated in the agreement."  *United States v. Stanton*, 103 F.4th 1204, 1210 (6th Cir. 2024) (citing *United States v. Wheat*¸ 988 F.3d 299, 306 (6th Cir. 2021).  In the context of unauthorized prescribing, "[t]he government may establish these elements of the crime through circumstantial evidence, including knowledge of unusual prescribing practices or knowledge of unusual patient

4

protocols." *Stanton*, 103 F.4th at 1210 (citing *United States v. Volkman*, 797 F.3d 377, 390 (6th Cir. 2015)).

The United States presented ample evidence at trial that supports the jury's guilty verdict. As a threshold issue, Bryson had provided no support for the proposition that the United States was required to prove that there was any kind of "quota," "kickback," "incentive," or any similar *quid pro quo* in exchange for the unauthorized prescriptions. [*See* R. 96.]   Bryson has also provided no support for his claim that the United States needed to prove that Bryson was the "director" of the operation. *Id.*   Rather, for the conspiracy charge, the government only had to prove that two or more persons agreed to violate drug laws, Bryson possessed the knowledge of and intent to join the conspiracy, and Bryson participated in the conspiracy. *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009).   Notably, Bryson does not argue that he did not have knowledge of the conspiracy, and in any event, the government offered a plethora of evidence on that front.

The essence of a conspiracy is the agreement to do something that the law prohibits.   The government need not prove that there was any formal agreement, nor does it have to prove that the parties agreed on all aspects of how the crime would be effectuated. *United States v. Maliszewski*¸ 161 F.3d 992, 1006 (6th Cir. 1998); *United States v. Shultz*, 855 F.2d 1217, 1221 (6th Cir. 1998).   An agreement "may be inferred from circumstantial evidence that can reasonably be interpreted as participation in a common plan" or "from acts done with a common purpose." *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989); *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990).

As for the existence of an agreement to violate federal law, the United States offered evidence that Jeremy Bryson and Don Bryson agreed that the "protocol" at AFM was that

5

providers could increase medications, but "no decrease in meds" was allowed.  As the United States notes, Dr. Harned testified that there is no medically acceptable justification for a blanket protocol of any kind, much less a "no decrease" protocol.  A rational juror could certainly conclude from that evidence that an agreement existed between the Defendant and another person that AFM would issue prescriptions that fell outside the usual course of professional practice, in violation of federal law.  *See Volkman*, 797 F.3d at 390-91 (holding that "turn[ing] a blind eye" to unusual prescribing practices is sufficient evidence to sustain a conviction). Thus, the government clearly established that an agreement existed to violate drug laws.

As far as Jeremy Bryson's knowledge of the conspiracy, the government again provided plentiful evidence on this front.  At trial, provider after provider testified as to the questionable prescribing practices at AFM, the lack of drug tests and pill counts, the state of disrepair of the clinic, the pressure to keep patient visits short, as well as the long lines outside AFM each morning and the late hours practitioners were expected to work.  Many of these practitioners worked at AFM for just a couple of days and testified that they knew within hours or even minutes that AFM was a "pill mill."  Surely Jeremy Bryson, as the owner of the practice, would also have known that prescriptions were being issued outside the generally accepted practices. *See United States v. Lang*, 717 F. App'x 523, 544 (6th Cir. 2017) (affirming a clinic owner's conviction for a drug conspiracy when "it was clear to even casual observers that [the clinic] was a pill mill").  As such, a rational trier of fact could have found this element beyond a reasonable doubt.

The United States also presented abundant evidence as to Bryson's participation in the conspiracy.  As the United States notes in its Response, Bryson's participation in the conspiracy was proven through evidence that Don and Jeremy Bryson "agreed to run AFM in a way that

6

virtually guaranteed illicit prescribing." [R. 100 at 14.]  As discussed above, Don and Jeremy Bryson agreed that the "protocol" at AFM was "no decrease in meds," which the United States established by showing text messages between Don and Jeremy, as well as text messages with other providers.  *Id.*  The United States also presented evidence that Jeremy Bryson agreed to limit urine drugs testing, KASPERs, and pill counts at AFM.  *Id.*

Bryson's attempts to minimize his role in the conspiracy are unavailing.  Contrary to Bryson's suggestions, a conviction on a conspiracy charge does not require proof that Jeremy Bryson was an "active participant in every phase or aspect of the conspiracy" or that he "played more than a minor role." *United States v. Harris*, 200 F. App'x 472, 500 (6th Cir. 2006) (citing *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004)).  Rather, the government only needed to prove that Bryson "understood the conspiracy's essential nature and intentionally joined." *Id.* (citing *United States v. Warner*, 690 F.2d 545, 550 (6th Cir. 1982)).  Viewing the trial record in favor of the jury verdict, as it must, the Court finds that the evidence established that Bryson knowingly and voluntarily participated in a conspiracy to violate federal drug laws.

Challenging a conviction on sufficiency of evidence grounds presents a "steep climb" for a defendant, as they must show that "no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt."  *United States v. Ross*, 703 F.3d 856, 882 (6th Cir. 2012).  Here, the United States provided sufficient evidence to prove all of the required elements to sustain a conviction under 21 U.S.C. § 846.  Thus, Bryson's arguments related to the sufficiency of evidence are without merit.

**B**

Bryson next asserts that he is entitled to an acquittal on Count 1 of the Superseding Indictment because neither Jeremy Bryson nor Don Bryson possessed the ability to write

prescriptions, and thus neither member of the conspiracy was capable of distributing or dispensing controlled substances.  [R. 96 at 1-2.]  Essentially, Bryson argues that two people who agree to violate the law are not guilty of conspiracy if neither of them possesses the ability to actually violate the law, and as non-registrants, neither Jeremy nor Don Bryson possessed the ability to write prescriptions that violate federal drugs laws.  *Id.*  This argument has curb appeal, no doubt, but upon closer inspection, the argument falters for several reasons.

First, Bryson's argument largely relies upon an extension of Fifth Circuit case law that is expressly not followed by the Sixth Circuit.  True enough, the Fifth Circuit has suggested that for a non-registrant to be found guilty of conspiracy to dispense a controlled substance, they must conspire with a registrant.  *See United States v. Albert*, 675 F.2d 712, 715-16 (5th Cir. 1982) ("The [non-registrants] need not themselves be able to dispense drugs. Rather, they must only have knowingly participated in a conspiracy with Dr. Albert, a licensed physician, to dispense controlled substances in violation of 21 U.S.C. § 841(a)(1)") (quotations and citations omitted).

However, even if followed by the Sixth Circuit, this line of cases would not help Bryson because the Fifth Circuit's reasoning is rooted in a distinction between the terms "dispense" and "distribute."  The Fifth Circuit has held that "a non-registrant who does not write prescriptions but otherwise acts to provide drugs would not properly be charged with dispensing rather than distributing[.]" *United States v. Armstrong*, 550 F.3d 382, 393 (5th Cir. 2008), *overruled on other grounds*.  Thus, even in the Fifth Circuit, the door is still open for non-registrants to be convicted of conspiring to *distribute*, and here, Bryson was charged with either "dispensing" or "distributing"  [R. 57.]

Further compounding matters, the Sixth Circuit has expressly rejected that there is any meaningful difference between the words "dispense" and "distribute."  *United States v. Ellzey*,

8

527 F.2d 1306, 1308 (6th Cir. 1976); *see also* Sixth Circuit Pattern Jury Instruction 14.02B ("The instruction uses 'dispense' as the primary term and offers 'distribute' as an option in brackets" because "Sixth Circuit cases can be found to support the use of either term").  To that end, even if Bryson had only been charged with "dispensing," his conviction would still stand. *United States v. Johnson*, 831 F.2d 124, 128 (6th Cir. 1987) ("In a further leap of logic [the defendant] argues that the act of 'dispensing' can only be committed by a licensed physician and since he is not a licensed practitioner, he cannot be lawfully convicted under section 841 for issuing bogus prescriptions. We are not persuaded by this argument.").

At bottom, Bryson ignores the default rule that "any person" who conspires to distribute a controlled substance violates federal law.  *See* 21 U.S.C. § 841(a).  This default rule is subject to the "except as authorized" language in 21 U.S.C. § 841(a), meaning that in certain limited circumstances, distribution of a controlled substance does not violate federal law.  One such circumstance is prescriptions "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a); *see also Ruan v. United States*, 597 U.S. 450, 455 (2022).  As such, before even reaching the question of whether the prescription was issued for a valid medical purpose, the distribution must fall into the "except as authorized" category.  Here, because Jeremy Bryson is a non-registrant, it is not necessary to reach the question of whether the prescriptions were issued for a valid medical purpose.  And of course, it defies logic to suggest that because Bryson does not fit within the exception, he is not subject to the general rule prohibiting distribution of controlled substances.  *Johnson*, 831 F.2d at 128.

In his oral Rule 29 motion, Bryson cited to *Ocasio v. United State*s, which held that the government need not demonstrate that each conspirator was capable of committing the

substantive offense, but rather "[i]t is sufficient to prove that the conspirators agreed that the underlying crime be committed by a member of the conspiracy who was capable of committing it." 578 U.S. 282, 292 (2016) (emphasis deleted). The United States submits that this case does not help Bryson because "anyone is capable of unlawfully dispensing or distributing" under the Controlled Substances Act. [R. 100 at 21.] Regardless, to the extent that this particular conspiracy could not have been accomplished without providers who possessed the ability to issue prescriptions, the government presented the testimony of several providers that spoke on their participation in the conspiracy.

Whether or not the providers were willing participants in the conspiracy is not for the Court to speculate at this juncture, but the fact remains that nearly all of the providers testified that they agreed to issue prescriptions outside the usual course of professional practice, so they participated nonetheless. In fact, the providers' participation in the scheme was a focal point of the defense, with the defense emphasizing that each provider had a professional duty to issue prescriptions only for a valid medical purpose. Many of the providers expressed regret over the prescriptions that they wrote, and some even testified that they knew the prescriptions were improper at the time of issuance. Accordingly, insofar as registrant participation in the conspiracy was required, the government presented sufficient evidence on that front as well.

### C

Bryson's final challenge relates to the language in the Superseding Indictment which, as noted above, charges him with conspiring to "distribute and dispense" controlled substances. [R. 57 at 3.] Bryson appears to challenge the use of the conjunctive "and," although it is not entirely clear whether Bryson is contending that the government was required to, and did not, prove both distributing and dispensing, or if he is arguing that the government improperly broadened the

10

basis for conviction beyond what the grand jury had alleged.  [R. 96 at 2.]  In any event, it is irrelevant because, as the United States notes, "[i]t is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial, the government may prove and the trial judge may instruct in the disjunctive form used in the statute."  *United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007) (quoting *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983)).

Here, the relevant statute uses the disjunctive "or" providing that "it shall be unlawful for any person knowingly or intentionally—to manufacture, distribute, *or* dispense. . .a controlled substance. . ." 21 U.S.C. § 841(a)(1) (emphasis added).  Thus, it was permissible for the government to charge this offense using either the disjunctive "distribute or dispense" or the conjunctive "distribute and dispense."  *See McAuliffe*, 490 F.3d at 534.  To the extent that Bryson argues that the government did not prove both conspiracy to distribute and conspiracy to dispense, the use of the disjunctive "or" in 21 U.S.C. § 841(a)(1) means that the government need only prove one or the other.  *Id.*  Further, as noted above, the Sixth Circuit has held that an attempt to argue that there is any meaningful difference between "distributing" and "dispensing" in this context "is merely a play on words."  *Ellzey*, 527 F.2d at 1308.  As such, Bryson challenge on this front is similarly unavailing.

### III

At the close of its proof, the government had presented enough elements to satisfy what this Court finds the law requires.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendant's Motion for Acquittal under Federal Rule of Criminal Procedure 29(a) is **DENIED.**

This the 13th day of April, 2026.

Gregory F. Van Tatenhove
United States District Judge